UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEFFREY G. FLINT,

                      Plaintiff,                      DECISION AND ORDER

vs.                                                          04-CV-6567

JO ANNE B. BARNHART, AS COMMISSIONER
OF THE SOCIAL SECURITY ADMINISTRATION,

                      Defendant.

_____

**APPEARANCES**

For the Plaintiff:                    Christine M. Valkenburgh, Esq.
                                               7 East Steuben St
                                               P.O. Box 232
                                             Bath, NY 14810
                                             (607) 776-3306

For the Defendant:                 Kathleen Mehltretter, Acting United States Attorney
                                           By:    Brian M. McCarthy, A.U.S.A.
                                           100 State Street Room 620
                                           Rochester, NY  14614
                                           (585) 263-6760


**I. INTRODUCTION**

**Siragusa, J**.  Before the Court is the Commissioner's motion (# 5) for judgment on the pleadings and plaintiff's motion for remand (# 7). For the reasons stated below, the Court reverses the Commissioner's decision and remands the case pursuant to the fourth sentence of 42 U.S.C. § 405(g) for the correction of the legal errors identified below.

**II. PROCEDURAL HISTORY**

On January 27, 2003, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, stating he had been disabled since December 30, 2000 due to severe pain in his arms, neck, and left knee. These applications were denied

initially, and plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing, at which plaintiff was represented by a non-lawyer, was held on February 2, 2004. The ALJ issued a written decision on July 29, 2004, finding that plaintiff was not disabled. On September 14, 2004, the Appeals Council denied plaintiff's request for a review, thus making the Commissioner's decision final. On , November 12, 2004, plaintiff commenced the present lawsuit pursuant to 42 U.S.C. § 405(g).

### III. BACKGROUND

Plaintiff was born on August 31, 1959 and is currently 46 years old. He is a high school graduate and worked as a carpet installer from about March 1997 through December 2002. This was a skilled job that required heavy lifting. (R. 112, 117.) He is married and supports a disabled wife and five children.  While he stopped working completely in December 2002, he started reducing his working hours in 2001 due to increasingly severe pain.[1]

The administrative record contains a questionnaire completed on September 25, 2002, by plaintiff's employer, John C. Mullen, owner of Rugs-2-Go. (R. 88-89). Mr. Mullen responded that from January 2002, he permitted plaintiff to work at fewer and easier duties, to work irregular hours, and to take more rest periods (R. 88). Although asked to identify if there was a date from June 2000 onward that plaintiff's condition declined, Mr. Mullen did not point to a specific date, but only stated that plaintiff's condition underwent "steady decline" (R. 89).

In a questionnaire about his activities of daily living, plaintiff reported that he prepared light meals, and did some mopping and sweeping, although these activities took him a long time (R. 162, 163). He reported that he drove, albeit not too long, and shopped

---

[1] In this lawsuit, plaintiff does not challenge the ALJ's finding that he was not disabled through December 31, 2001, since he was able to work part time until that time. (Pl.'s Mem. of Law at 1).

for groceries (R. 163, 164, 185). He visited with friends and attended gun club gatherings (R. 165).

At his hearing before the ALJ, plaintiff, who testified[2] he is left-handed, testified that he had chronic pain in both elbows, which radiated to his arms (R. 38, 39, 50). He stated that pain medication did not reduce his pain (R. 38). He also alleged that he experienced pain in his neck, back, and left knee (R. 39, 40). He further reported that he had hypertension, for which he took medicine (R. 41), and he asserted a problem with gastroesophageal reflux disease, or GERD, resulting in nausea and stomach pain (R. 45).

Plaintiff also testified that he could stand for less than twenty minutes and sit for twenty to thirty minutes (R. 42, 43). He stated that he could not lift anything because he had a weak grip (R. 42).  Plaintiff also testified that Dr. Nassar Chaudhry, his primary care physician, has been his treating physician for his entire adult life. (R. 37.)

## IV. MEDICAL HISTORY

Plaintiff's back and knee pain were noted as early as 1997 (T. 270, 271), and pain and discomfort involving his left forearm, along with pain and numbness in his fingers, was documented in 1998. (T. 265).  From 1998 to 1999, Dr. Chaudhry  consistently found considerable pain in plaintiff's left forearm, and numbness, tingling and intermittent pain in his left elbow. (T. 248, 257, 260, 261, 263, 264).  Dr. Chaudhry found these symptoms to involve the ulnar and median nerves. (T. 261).   In 2000, the symptoms became worse, with numbness, tingling, pain and impaired pin prick sensation noted over both hands and forearms (T. 244, 247). Prior to his visit with plaintiff on July 26, 2000, Dr. Chaudhry had referred plaintiff to hand surgeon Dr. Susan M. Ott. (T. 244).

---

[2]Although he testified to the ALJ he was left-handed (R. 39), on the February 13, 2001, Orthopedics Clinic Note of Dr. Susan M. Ott, is written, "[h]e is right-hand dominent" (R. 214).

On February 13, 2001, plaintiff was examined by Dr. Ott[3] for complaints of elbow pain (R. 214). Plaintiff reported that he had been doing fine after Dr. Ott's August 21, 2000 ulnar surgery (R. 187), until three weeks prior to the February examination, when he increased his work schedule (R. 214). Dr. Ott found that plaintiff had tenderness along the wrist and elbow and decreased grip strength (R. 214). She opined that plaintiff should "switch to a non-heavy laboring job" (R. 214), and during a March 13, 2001, follow-up, Dr. Ott reiterated her suggestion that plaintiff should try a non-laboring job (R. 213).

On May 31, 2001, plaintiff saw Dr. Chaudhry (R. 240). Plaintiff reported that he had injured his left knee two months prior to the visit, when he fell (R. 240). Dr. Chaudhry recommended an x-ray of plaintiff's left knee (R. 240). He also noted that plaintiff had hypertension and GERD which were well-controlled (R. 240). On June 1, 2001, plaintiff did have an x-ray of his left knee, which revealed soft tissue swelling, but no fracture or effusion (R. 192).

On June 6, 2001, at Dr. Chaudhry's referral, plaintiff saw Dr. John S. Halpenny for his left knee problem (R. 296, see R. 293-94, see also 285-92). On examination, plaintiff had good range of motion and knee strength (R. 294). He had swelling, but no significant tenderness (R. 294). Dr. Halpenny diagnosed plaintiff with bursitis of the left knee (R. 296).

During an October 18, 2001, follow-up, Dr. Halpenny noted that plaintiff had good motion of the left knee, only mild tenderness, and four out of five (4/5) motor strength (R. 293). Dr. Halpenny also found that plaintiff had "decent" motion of the cervical spine, shoulders, elbows, and wrists (R. 293), and found his strength was fair and equal (R. 293). Plaintiff denied any neurological symptoms in the upper extremities, and he was neurovascularly intact (R. 293). The doctor recommended an elastic brace for the knee.

---

[3]Dr. Ott had performed a left ulnar surgery on plaintiff in August 2000 (see R. 187-89), and a right ulnar surgery in October 2000 (see R. 190-91).

On November 29, 2001, plaintiff had a follow-up visit with Dr. Halpenny. At that time, Dr. Halpenny noted that plaintiff's bursitis of the knee was doing well (R. 292).

On January 15, 2002, plaintiff returned to Dr. Ott with complaints of bilateral upper extremity pain (R. 212). Dr. Ott thought that plaintiff may have a neck condition that might account for his "vague" upper extremity symptoms, and she ordered a magnetic resonance image ("MRI") scan of the neck (R. 212). She reiterated that plaintiff's elbows would not improve until plaintiff changed his profession (R. 212).

A January 15, 2002 x-ray of the cervical spine revealed "mild" degenerative changes (R. 206). A January 31, 2001, MRI of plaintiff's cervical spine revealed no herniated disc or bulging (R. 205).

On February 7, 2002, plaintiff underwent electromyogram ("EMG") and nerve conduction studies of both arms, which were essentially normal (R. 203). A February 13, 2001 wrist x-ray revealed normal alignment and no fracture or dislocation (R. 207).

On May 23, 2002, plaintiff returned to Dr. Halpenny (R. 285). The doctor found that plaintiff had good range of motion of the cervical spine and left elbow (R. 285). Although plaintiff complained of pain along the elbow and wrist, circulation was intact and there was no muscle wasting in the left hand. The doctor noted that despite complaints, plaintiff had good strength on pronation, and his only weakness was in gripping (R. 285). An examination of the right arm revealed similar findings, with adequate strength, and no obvious sensory loss (R. 285). Dr. Halpenny noted that plaintiff needed to work to support his family, but that his symptoms made it difficult for him to put in a full work week (R. 8 286).

On June 13, 2002, plaintiff was again seen by Dr. Chaudhry (R. 231). Dr. Chaudhry noted that plaintiff had upper extremity overuse syndrome with bilateral elbow tendinitis, neck pain, degenerative joint disease of the knees, hypertension, and GERD (R. 227). He

stated that plaintiff's upper extremity pain was becoming incapacitating, and he "may need to seek disability status" (R. 231, 232). The doctor noted that plaintiff's hypertension was controlled (R. 232).

During an August 15, 2002, follow-up, Dr. Chaudhry stated that plaintiff's GERD was "very well controlled" (R. 227). Dr. Chaudhry noted that plaintiff had applied for Social Security benefits, and thought plaintiff made a "valid candidate for such" (R. 227).

On August 22, 2002, plaintiff saw Dr. Halpenny, with complaints of pain in his forearms and numbness and tingling in the hands (R. 283). Dr. Halpenny found that plaintiff had tenderness over the ulnar nerves bilaterally, but good range of motion (R. 283); that his sensation was intact; and that his grip strength on the left was "somewhat weak" and on the right it was "fairly good" although pinch strength on the right was "a bit" weak (R. 283). Dr. Halpenny diagnosed chronic tendinitis in both forearms and recurrent ulnar neuritis (R. 283).

On September 25, 2002, at the Commissioner's request, plaintiff was examined by Dr. Frank Norsky, an orthopedist. (R. 297.) Plaintiff reported that he was still working part-time. (R. 298.) In the summary of his examination findings, Dr. Norsky noted that plaintiff had diminished pinprick sensation in the fingers and that grip strength was slightly decreased, which would correlate with possible carpal tunnel syndrome. Dr. Norsky noted that the rest of the physical examination was within normal limits (R. 299). In terms of work-related activities, Dr. Norsky reported that plaintiff could not do "heavy" lifting, but was not restricted in terms of standing, walking, or sitting (R. 298). Dr. Norsky's review of plaintiff's neck revealed no abnormalities. There was normal range of motion of the spine, and no tenderness. His review of plaintiff's upper extremities revealed no atrophy and appropriate strength. Dr. Norsky found that plaintiff's grip strength was slightly weak at four out of five (R. 298). He also found that plaintiff had loss of sensation in the fingers, but well-preserved

sensation in the palm and arm, and that his range of motion of the fingers and deep tendon reflexes were normal. (R. 298.) Moreover, a review of plaintiff's lower extremities revealed no abnormalities. (R. 299.) Dr. Norsky concluded that plaintiff was "somewhat limited" in his ability to work with "certain restrictions."

On December 26, 2002, Dr. Chaudhry opined that plaintiff was "completely disabled for substantial work with his upper extremities, because of his severe pain, related to his overuse syndrome and lateral elbow tendinitis and epicondylitis"[4] (R. 318). On July 1, 2003, Dr. Chaudhry reiterated his opinion that plaintiff was disabled because of his pain in the upper extremities. (R. 343; *see* R. 370.)

On March 7, 2003, plaintiff was examined by another orthopedist, Dr. Peter Haritatos, at the request of the Commissioner (R. 328-32). On examination, Dr. Haritatos, reported that plaintiff's gait and station were normal (R. 330), and that his hand and finger dexterity were intact (R. 331). Furthermore, Dr. Haritatos noted that a review of plaintiff's cervical spine revealed full flexion and extension (R. 331), that a review of his upper extremities revealed full range of motion of the shoulders, elbows, forearms, and wrists; that a review of the thoracic and lumbar spine revealed diminished flexion and extension and tenderness; and that a review of the lower extremities revealed full range of motion of the knees and ankles bilaterally, and no muscle atrophy or sensory abnormality. (R. 331.) Dr. Haritatos further reported that plaintiff's strength was full, at 5/5, and that there was no sensory abnormality. X-rays of plaintiff's cervical and lumbosacral spine revealed slight degenerative changes (R. 333). Dr. Haritatos assessed that plaintiff was moderately

---

[4]Epicondylitis is an inflammation of the epicondyle or of the tissues adjoining the epicondyle to the humerus. Dorland's Illustrated Medical Dictionary, 625 (30th ed. 2003). An epicondyle is an emminence upon a bone, above its condyle. *Id.*

restricted from doing heavy lifting or from doing a lot of walking, climbing, or standing (R. 332).

On May 19, 2003, plaintiff was examined by Dr. Ibrahim Al-Sinjari (R. 348-49). Plaintiff complained of a problem with his left hand (R. 348). A review of plaintiff's left elbow revealed full range of motion, although he did complain of severe sensitivity. Dr. Al-Sinjari reported that there was numbness and tingling and diminished sensation along the third and fourth fingers of plaintiff's left hand, and observed that, while range of motion of the wrist was good, grip strength was weak. Dr. Al-Sinjari also noted that an examination of plaintiff's right elbow revealed full range of motion, and that plaintiff was experiencing numbing and tingling in the fourth and fifth fingers. (R. 348.) Dr. Al-Sinjari opined that plaintiff had a partial, moderate, permanent disability with a 30% loss of use of both arms. (R. 349.)

On January 22, 2004, plaintiff saw Dr. Eric Mitchell for his complaints of bilateral pain in the shoulders, elbows and wrists (R. 368-69, repeated at R. 389-90). Dr. Mitchell recommended another ulnar nerve compression (R. 369).

From February 9, 2004, through February 11, 2004, plaintiff was admitted to St. James Mercy Hospital for probable transient ischemic episodes (R. 383). A review of plaintiff's neurological, and cardiovascular system was unremarkable (R. 386). Plaintiff remained asymptomatic after his admission, until his discharge (R. 383).

On February 18, 2004, plaintiff underwent an open transposition of the left ulnar nerve with resection (R. 371-72, repeated at R. 381-82). Dr. Mitchell, who performed the surgery, stated that plaintiff did "extremely well." (R. 371.)

## V. ANALYSIS

### A.  The Standard for Finding a Disability

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). The Social Security Administration ("SSA") has promulgated regulations which establish a five-step sequential analysis an ALJ must follow:

> First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities." If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (citations and internal quotation marks omitted). Plaintiff bears the burden of proof for steps one through four. The burden of proof shifts to the Commissioner for the fifth step. *See DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir.1998); *Colon v. Apfel,* No. 98 Civ. 4732 (HB), 2000 U.S. Dist. LEXIS 2928, *8 n.2, 2000 WL 282898, *3 (S.D.N.Y., Mar. 15, 2000).

### B.  The Standard of Review

The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal*, 134 F.3d at 501. It is well settled that

> it is not the function of a reviewing court to determine *de novo* whether the claimant is disabled. Assuming the Secretary [Commissioner] has applied proper legal principles, judicial review is limited to an assessment of whether the findings of fact are supported by substantial evidence; if they are supported by such evidence, they are conclusive.

*Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 231–32. Consequently, if the ALJ's findings are supported by substantial evidence and the correct legal principles were applied, the findings will be sustained even where substantial evidence may support the claimant's position and despite the fact that the Court, had it heard the evidence *de novo*, might have found otherwise. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)*; Campbell v. Barnhart*, 178 F. Supp. 2d 123, 128 (D. Conn. 2001).

### C. The ALJ's Decision

At step one of the sequential evaluation process, the ALJ found that plaintiff had engaged in substantial gainful activity from December 30, 2000, through December 31, 2001, but not thereafter (R. 15, 20). Thus, he found that plaintiff was not disabled during this period. With respect to the remaining period, the ALJ proceeded through the next steps of the sequential evaluation process. At step two, he found that plaintiff's disorder of the muscles, ligaments, and fascia, and his mild degenerative disc disease were severe impairments (R. 20). At step three, he found that plaintiff did not have an impairment or combination of impairments which met or equaled the criteria of any impairment contained in the Listings (R. 20). At step four, the ALJ found that plaintiff retained the residual functional capacity to perform a limited range of sedentary and light work, which did not require more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling or constant and repetitive use of the arms and hands, as in the operation of hand

controls (R. 16, 18, 20).[5] Relying upon the testimony of the vocational expert, the ALJ concluded that although plaintiff could not return to his past relevant work as a carpet installer, he could perform other work that existed in significant numbers in the national and regional economy. (R. 19, 21.) Consequently, the ALJ found that plaintiff was not disabled. (R. 21.)

### D.   Discussion

Plaintiff raises the following four points in his motion to remand:

- The ALJ failed to properly apply the treating physician rule, failed to set forth good reasons for disregarding the opinion of the treating physician, and, failed to explain the weight he assigned to any of the medical evidence in the record;

- The ALJ failed to properly assess plaintiff's subjective complaints of pain and failed to set forth sufficiently specific reasons for finding that plaintiff's subjective complaints of pain were not credible;

- The ALJ's questioning of the vocational expert was seriously flawed and, as such, his testimony provided an insufficient basis for finding that there are a significant number of jobs in the national economy that plaintiff can perform; and

- The case should be remanded for the calculation of benefits.

The Court determines that the ALJ failed to properly apply the treating physician rule, did not sufficiently address plaintiff's credibility, and did not properly summarize plaintiff's limitations for the vocational expert. For those reasons, the Court reverses the Commissioner's decision and remands the case pursuant to sentence four of § 405(g).

---

[5]Light work involves lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). Light work may also require a good deal of walking, or sitting most of the time with some pushing or pulling of arm or leg controls. *Id.* A determination that an individual could do light work is also a determination that he or she can do sedentary work unless there are additional limitations such as loss of fine dexterity or inability to sit for long periods of time. *Id.* Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a). Sedentary work also requires that an individual be able to stand and walk for a total of approximately two hours, as well as sit six hours, during an eight-hour workday. Social Security Ruling (SSR) 96-9p; *see* 20 C.F.R. §§ 404.1567(a), 416.967(a).

### 1.      Treating Physician Rule

The treating physician rule mandates that the medical opinion of a claimant's treating physician be given controlling weight if it is well supported by medical findings and is not inconsistent with the other substantive record evidence.  20 C.F.R. 404.1527(d)(2); *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998); *Shaw v. Chater*, 221 F.3d 126 (2d Cir. 2000). Under the applicable regulations, the Commissioner is required to explain the weight given to the opinions of treating physicians (20 C.F.R. 404.1527(d)(2)) and the failure to provide "good reasons" for not crediting the opinion of a treating physician constitutes a failure to apply the proper legal standard and is, thus, grounds for a reversal. *Schaal v. Apfel*, 134 F.3d 496; *Snell v. Apfel*, 177 F.3d 128 (2d Cir. 1999); *Johnson v. Bowen*, 817 F.2d 983 (2d Cir. 1987).

Here, plaintiff's treating physician, Dr. Chaudhry, has cared for him all his adult life, and has expressed an opinion that, as of December 26, 2002, plaintiff was "completely disabled for substantial work with his upper extremities, because of his severe pain, related to his overuse syndrome and lateral elbow tendinitis and epicondylitis" (R. 318). On July 1, 2003, Dr. Chaudhry reiterated that plaintiff was disabled because of his pain in the upper extremities (R. 343; see R. 370). The Commissioner argues that the ALJ was not required to give any special deference to Dr. Chaudhry's statements of disability and that he did not provide a medical source statement that was inconsistent with less than sedentary work. Additionally, the Commissioner argues that other opinions of record, including those of Dr. Norsky, Dr. Haritatos, and Dr. Ott, all support a finding that plaintiff could do at least sedentary work, with the non-exertional limitations specified and that Dr. Chaudhry's opinions are inconsistent with those reports. (Comm.'s Mem. of Law at 22.) However, the Court disagrees with the Commissioner.

The ALJ's decision does not explain why Dr. Chaudhry's opinion was not controlling, nor does the decision indicate what weight, if any, was given to his opinion. The Court finds, therefore, that the ALJ failed to properly apply the Commissioner's treating physician rule, and the decision must be reversed and remanded for analysis of Dr. Chaudhry's opinion under a proper application of the rule.

### 2. Claimant's Credibility

Plaintiff argues that the ALJ also failed to make a reasoned finding regarding his credibility pursuant to 20 C.F.R. § 404.1529. With regard to evaluating a claimant's credibility,

> [t]he regulations set forth a two-step process to evaluate a claimant's testimony regarding his symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. Such an evaluation of a claimant's credibility is entitled to great deference if it is supported by substantial evidence.
>
> In assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony. The regulations require the ALJ to consider not only the objective medical evidence, but also:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms ...; and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Murphy v. Barnhart*, No. 00Civ.9621(JSR)(FM), 2003 WL 470572, *10-*11 (S.D.N.Y. Jan. 21, 2003) (*citing* 20 C.F.R. § 404.1529(c)) (other citations and internal quotations omitted).

In mentioning plaintiff's testimony, the ALJ did not make any assessment of his credibility, except to note that his claims of drowsiness and dizziness from his medications were not documented. (T. 18.) The Commissioner simply states in her supporting memorandum of law that, "It is well within the discretion of the Commissioner to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of the symptomatology." (Comm.'s Mem. of Law at 24.) However, the ALJ was required to assess plaintiff's subjective complaints and testimony in light of the evidence in the record and provide a detailed analysis in his decision. *See Murphy*, No. 00Civ.9621(JSR)(FM), 2003 WL 470572 at *10-*11.

Since the ALJ's credibility determination was not made in accordance with the regulatory requirements, his decision is subject to reversal on this basis as well. 42 U.S.C. § 405(g).

### 3. Vocational Expert

A vocational expert's ("VE") testimony should be credited when there is substantial record evidence to support the assumption underlying the hypothetical upon which the VE based his or her opinion. *Dumas v. Schweiker*, 712 F.2d 1545 (2d Cir. 1983). The hypothetical question must present the full extent of the claimant's impairments and provide a sound basis for the expert's testimony. *De Leon v. Secretary of Health and Human Services*, 734 F.2d 930 (2d Cir. 1984). The VE's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job. *Aubeuf v. Schweiker*, 649 F.2d 107 (2d Cir. 1981). Proper use of vocational testimony presupposes both an accurate assessment of the

claimant's physical and vocational capabilities and a consistent use of that profile by the VE in determining which job the claimant can perform. *Lugo v. Chater*, 932 F. Supp. 497 (S.D.N.Y. 1996).

During the hearing, the ALJ asked the VE, "[a]re there in the national economy jobs at the light exertional level that do not require the worker to use his hands and arms in constant repetitive motions such as might be required by someone who had to work hand controls of a machine? Are there jobs in, in the light level that do not impose this constant use of the upper extremities, constant, repetitive use?" (R. 54.) In *De Leon*, the Second Circuit observed that, "[i]n positing hypothetical questions to the vocational consultant, however, the ALJ did not even present the full extent of De Leon's physical disabilities. He made no mention, for example, of De Leon's shoulder or leg problems, or the full implications of his epilepsy." *De Leon*, 734 F.2d at 936. Here while the VE was present for plaintiff's testimony and heard the limitations described by plaintiff to the ALJ. (R. 31), plaintiff's extensive medical history was not thoroughly discussed at the hearing, and the record does not show that the VE had access to the medical reports prior to testifying. In that regard, the Court finds that the ALJ's questioning of the VE did not present the full extent of plaintiff's limitations. Therefore, the VE's responses were not fully informed and cannot be used as substantial support for the Commissioner's burden to show that plaintiff is capable of doing any other work.

### 4. Remand for Calculation of Benefits

Plaintiff urges that the case be remanded only for calculation of benefits, arguing that the Commissioner's finding that plaintiff could engage in sedentary work was not supported by substantial evidence and that no purpose would be served by remanding the case for a rehearing. However, on the current record, the Court is unable to determine whether the ALJ's conclusion is or is not supported by substantial evidence. "Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper

legal standard, [the Court] generally vacate[s] and instruct[s] the district court to remand the matter to the Commissioner for further consideration." *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000).

Thus, this case must be remanded to the ALJ to determine what weight to give Dr. Chaudhry's opinion, and to determine plaintiff's credibility with regard to his subjective complaints. Then, based upon these determinations, the ALJ must resolve whether the Commissioner has met her burden of showing that plaintiff is capable of performing "any other work."

### IV. CONCLUSION

Accordingly, the Court denies the Commissioner's (# 5) motion for judgment on the pleadings, grants, in part, plaintiff's motion to remand (# 7) and reverses the Commissioner's final decision, remanding the case under the fourth sentence of 42 U.S.C. § 405(g) for correction of the legal errors identified above.

IT IS SO ORDERED.

Dated: October 11, 2005
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge